1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 15, 2019

3          UNITED STATES DISTRICT COURT          SEAN F. McAVOY, CLERK
           EASTERN DISTRICT OF WASHINGTON

4

5

6   STEPHEN R. JACKSON, SR., a single      No.    2:18-cv-00022-SMJ
    person,

7                         Plaintiff,       **ORDER ON DISPOSITIVE
                                           MOTIONS**
              v.

8

9   ASOTIN COUNTY, ASOTIN
    COUNTY SHERIFF'S
    DEPARTMENT, SHERIFF JOHN
10  HILDERBRAND, DEPUTY JEFFREY
    POLILLO, DEPUTY MICHAEL
11  MCGOWAN, and DEPUTY LUCAS
    FORSBERG,

12
                         Defendants.
13

14        Before the Court are (1) Defendants' motion to partially dismiss Plaintiff's

15  claim for damages, ECF No. 47; (2) Defendants' motion for summary judgment,

16  ECF No. 48; and (3) Plaintiff's cross-motion for partial summary judgment, ECF

17  No. 52. Defendants move to dismiss all of Plaintiff's claims as well as request for

18  damages, while Plaintiff moves for summary judgment on his 42 U.S.C. § 1983

19  claims arising from an unlawful search and seizure prior to arrest. As the Court finds

20  that oral argument is not warranted under Local Civil Rule 7(i)(3)(B)(iii), the Court

considered the motions without oral argument on the date signed below. Having reviewed the documents submitted and the file in this matter, the Court is fully informed and denies Plaintiff's motion, denies Defendants' motion to dismiss Plaintiff's request for damages, and partially grants Defendants' motion for summary judgment.

## BACKGROUND

At 10:28 PM on November 27, 2015, Asotin County dispatch received a 911 call from Kent Johnson. ECF No. 49 at 2. Mr. Johnson reported a citizen dispute at his address in Clarkston, Washington. *Id*. Deputy Michael McGowan was the first to respond to Mr. Johnson's 911 call. *Id*. Dispatch informed him that the caller reported a disturbance between multiple people, and that rocks or some type of weapon may be involved. *Id*.

The subject of Mr. Johnson's 911 call was described as a black male, thirty to forty years old, wearing red tennis shoes. *Id*. The deputies knew Plaintiff lived in the immediate vicinity of Mr. Johnson, and that he matched the description shared by dispatch. *Id*. at 2–3. Recognizing this, Deputy Jeffrey Polillo instructed Deputy McGowan to respond to Plaintiff's residence while Deputy Polillo went to Mr. Johnson's residence. *Id*. at 3. The plan was for Deputy Polillo to speak with Mr. Johnson, and then meet up with Deputy McGowan and Plaintiff. *Id*.

When Deputy McGowan arrived at Plaintiff's residence, Plaintiff was seated

in the back seat of a vehicle parked in his driveway. *Id*. Deputy McGowan asked Plaintiff to exit the vehicle and speak with him, which Plaintiff agreed to. *Id*. Plaintiff was wearing red tennis shoes. *Id*.

After Plaintiff exited the vehicle, Deputy McGowan noticed Plaintiff putting his hands in his pockets. *Id*. Deputy McGowan then asked to do a "very quick pat-down," to which Plaintiff consented. *Id*. Deputy McGowan notes that he "didn't feel anything." *Id.* at 3–4. Around the time Deputy McGowan conducted the pat-down, Deputy Lucas Forsberg arrived on scene. *Id.* at 4. After Deputy Forsberg's arrival and the pat down, Deputy McGowan asked Plaintiff what had happened. *Id.* Plaintiff responded that he got into an argument with his neighbors. *Id*. Thereafter, the deputies and Plaintiff waited for Deputy Polillo to arrive and share what Mr. Johnson had told him. *Id.* Plaintiff was told "he can't go nowhere." ECF No. 56 at 4. He did not believe he was free to leave. ECF No. 53 at 4. Deputy McGowan did not feel "a need to handcuff [Plaintiff] prior to Deputy Polillo arriving." *Id.* at 5.

When Deputy Polillo arrived 10–15 minutes later, he was told a weapons pat down had already occurred and that Plaintiff had no weapons. *Id.* at 5–6. Deputy Polillo then started talking to Plaintiff. ECF No. 49 at 4. He had planned only to inform Plaintiff that he had spoken with Mr. Johnson, who did not want Plaintiff on his property. ECF No. 56 at 4. However, noting Plaintiff's erratic behavior of acting nervous and putting his hands on his pocket and turning away from him, Deputy

McGowan became suspicious and surmised that Plaintiff possessed either a weapon or drugs in his pocket. ECF No. 49 at 5. He also noticed something bulging from Plaintiff's left pant pocket. *Id.* Deputy McGowan also observed Plaintiff turn away from Deputy Polillo and "[keep] on trying . . . to go in his pocket." *Id.* Deputy Polillo then asked Plaintiff if he could check to make sure he did not have drugs or a weapon in the pocket. *Id.* As he approached Plaintiff, Plaintiff "became nervous and bladed away from [him] reaching towards his left front pocket." *Id.*

Deputy Polillo had observed this behavior from Plaintiff in the past when attempting to hide something from officers. *Id.* at 6. Deputy Polillo had known Plaintiff for ten years and had law enforcement contact with him on several occasions. ECF No. 53 at 8. He told Plaintiff not to reach into his pocket and asked a second time if he could search him. ECF No. 49 at 6. He claims Plaintiff consented, although Plaintiff asserts that he "never consented to the search." ECF No. 53 at 9.

When Plaintiff again moved his hand toward his front left pocket, Deputy Polillo grabbed his hand for safety purposes. ECF No. 49 at 6. From outside of the pocket, Deputy Polillo felt what he immediately believed was a glass methamphetamine pipe. ECF No. 56 at 6. When Plaintiff again consented to a search, Deputy Polillo then removed a glass pipe from the pocket and observed white residue on the stem. *Id.* Believing it to be methamphetamine, for which

possession is illegal, Deputy Polillo placed Plaintiff in handcuffs and advised him that he was under arrest. *Id.*

A skirmish ensued. Once placed in handcuffs, Plaintiff purposefully fell to the ground, landing on his left leg, and began thrusting his left leg to the ground. ECF No. 49 at 7. Jackson testified that he did this "to make sure [he] didn't have any drugs in [his] pocket." ECF No. 50-4 at 20. Plaintiff was pulled to the ground by the deputies so that he would not destroy evidence or hurt himself. ECF No. 49 at 8. Once Plaintiff was under control, Deputy Polillo removed the pipe from Plaintiff's pocket and placed it on the hood of his patrol car. *Id.*

At this point, Plaintiff was helped up and brought over to the patrol car to be searched. It is disputed what precisely happened next. Defendant claims that once he got near the hood of the car, Plaintiff slammed his head into the hood over where the pipe had been placed, as if to destroy it. *Id.* Plaintiff claims he merely dropped his head. ECF No. 50-4 at 21. Plaintiff was then searched by Deputy Polillo while the other two deputies held Plaintiff from his sides. ECF No. 49 at 9. During the search, Deputy Polillo claims Plaintiff was resistive and that he was "mule kicked" in the groin. *Id.* at 9. Deputy McGowan did not witness a mule kick. ECF No. 61 at 5.

Deputy Polillo then grabbed Plaintiff's leg from the back and pulled it straight back, bringing Plaintiff to the ground. ECF No. 49 at 9. Because Plaintiff

was handcuffed behind his back, his head hit the hood on the way down and he fell face first to the ground. ECF No. 50-4 at 21–22, 26. Defendants claim that while on the ground, Plaintiff continued to resist attempts to subdue him, ECF No. 49 at 9, while Plaintiff claims that once on the ground, he lost consciousness and moved his body when he regained consciousness only to gather his bearings, ECF No. 50-4 at 23. Plaintiff was pulled up from the ground by his handcuffs, ECF No. 50-4 at 25. Thereafter, he was again advised he was under arrest and was told his *Miranda* rights so that the deputies could ask him if he had anything else incriminating on his person prior to arriving to the jail facility. ECF No. 49 at 10; ECF No. 50-6. He was then transported to the Asotin County Jail.

On January 18, 2018, Plaintiff filed his complaint. ECF No. 1. He states causes of actions for assault, violations of 42 U.S.C. § 1983, violations of the United States and Washington state constitutions, discrimination under the "United States Civil Rights Act" and the "Washington State Civil Rights Act," excessive force, unlawful imprisonment, negligent hiring, negligent supervision, and negligent retention. *Id.* at 1–20. He also alleges agency theory and the doctrine of *respondeat superior.*[1] *Id.* at 16–17.

//

//

---

[1] These are not causes of action.

ORDER ON DISPOSITIVE MOTIONS - 6

**LEGAL STANDARD**

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the

burden of proof at trial, the trial court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## DISCUSSION

### A.    Unlawful search and seizure under § 1983

Plaintiff moves for partial summary judgment on his claims under § 1983 for violations of the Fourth Amendment "as factually alleged in Plaintiff's Complaint (ECF No. 1) ¶¶ 4.3, 4.4, 5.22 and 6.22."[2] ECF No. 53 at 10. Plaintiff concedes that

---

[2] Paragraph 6.22 contains Plaintiff's sixth "cause of action" for an alleged violation of his rights "pursuant to Article I Section 3, 7, 14, and 35 of the Washington State Constitution and the 4th, 8th, and 14th Amendments to the Constitution of the United States." ECF No. 1 at 1 ¶ 6.22. Apart from his claims subsumed under § 1983, which provides "a method for vindicating federal rights elsewhere conferred," Plaintiff states no separate cause of action for the alleged violations of the federal constitution. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Moreover, without statutory authority or legislative instruction, there is no implied cause of action for damages based upon violations of the Washington constitution. *See Blinka v. Wash. State Bar Ass'n*, 109 Wash. App. 575, 591 (2001); *Sys. Amusement, Inc. v. State*, 7 Wash. App. 516, 517 (1972); *Lewis v. Soc'y of Counsel Representing Accused Persons*, No. C13-1512RSL, 2013 WL 6513009, at *5 (W.D. Wash. Dec. 12, 2013). And Plaintiff does not propose contrary or alternative authority, present "a reasoned or principled basis upon which to construct a constitutional cause of action," or establish why "a constitutional cause of action is

Deputy McGowan's initial stop and frisk was reasonable because he was responding to a call and gathering information. ECF No. 53 at 14. However, he asserts he was unlawfully seized thereafter when the officers held Plaintiff until Deputy Polillo's arrival. *Id.* at 14–15. And Plaintiff further argues that any subsequent search was nonconsensual and unlawful. *Id.* at 15. The Court addresses each claim in turn, taking care to view the facts in a light most favorable to the nonmoving party for both summary judgment motions before the Court.

### 1.   Unlawful seizure

Plaintiff asserts he was unlawfully seized during the period of time when he and the other officers awaited Deputy Polillo's arrival, while Defendants assert that such restraint on freedom was reasonable under the circumstances.

An investigatory stop, often referred to as a *Terry*[3] stop, is permissible under the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). There is no bright line rule to determine when an investigatory stop becomes an unlawful seizure. *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir.

---

more appropriate than the common law cause of action which already exists." *Reid v. Pierce County*, 136 Wash. 2d 195, 214 (1998). Accordingly, the Court dismisses Plaintiff's sixth "cause of action" for violation of his state and federal constitutional rights.

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

ORDER ON DISPOSITIVE MOTIONS - 9

1988).

"In determining whether stops have turned into arrests, courts consider the totality of the circumstances." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) (internal quotation marks omitted). It is a fact-specific inquiry. *Id.* Courts consider both the intrusiveness of the stop and the justification for the use of such tactics. *Id.* "The relevant inquiry is always one of reasonableness under the circumstances." *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995).

Here, Plaintiff agreed to speak to Deputy McGowan and consented to a quick pat down search. Deputy McGowan noticed immediately that Plaintiff matched the description of the subject of the 911 call. Thereafter, although he was never placed in handcuffs, Plaintiff was told he was not free to leave, and he did not believe he was free to go.

However, "restrictions on a person's freedom of movement may be imposed to maintain the status quo while making an initial inquiry provided the force displayed is not excessive under the circumstances." *United States v. Maybusher*, 735 F.2d 366, 372 (9th Cir. 1984). "The whole point of an investigatory stop, as the name suggests, is to allow police to *investigate*." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002). Thus, for the period of 15–20 minutes until Deputy Polillo arrived, "[t]he critical inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions

quickly, during which time it was necessary to detain the defendant." *United States v. Torres–Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996).

The Court concludes that the officers reasonably restricted Plaintiff's movements until Deputy Polillo arrived, as planned, upon first talking to Mr. Johnson. This was the initial strategy for the investigation, and there is no indication in the record that any of the officers did not act diligently in investigating the dispute between Mr. Johnson and Plaintiff. *See United States v. Thompson*, 282 F.3d 673 (9th Cir. 2002) (finding that a delay of 15–20 minutes was neither lengthy nor unnecessary where officers diligently attempted to confirm or dispel their suspicions of criminal activity). Moreover, the brief detention was not intrusive in any sense. Plaintiff himself notes that there was no excessive force used during this period. ECF No. 50-4 at 14, 15, 27. And he was not placed in handcuffs.

Accordingly, the Court concludes that under the totality of the circumstances, the officers acted reasonably to maintain the status quo during the investigation of the 911 call. Because no reasonable trier of fact could find other than for Defendants, the Court denies Plaintiff's partial summary judgment motion on this § 1983 claim and grants summary judgment in Defendants' favor.

## 2.    Unlawful search

There remains a question as to whether there was an unlawful search that produced the methamphetamine pipe. While Plaintiff asserts he never consented to

a search, Defendants posit the search was consensual. Deputy Polillo testified that he was given consent on two occasions and wrote the same in his narrative report. Deputy McGowan also testified that Plaintiff consented "a couple times." And Deputy Forsberg also wrote that Plaintiff gave his consent.

However, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another," *Nelson*, 571 F.3d at 929, and may not weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Plaintiff disputes giving consent, and his testimony is sufficient to create a glaring dispute of material fact.

### i.    Plain touch doctrine

Defendants nonetheless argue that regardless of whether Plaintiff consented, Deputy Polillo's search was lawful under the plain feel doctrine. ECF No. 48 at 13–14. Plaintiff disagrees. ECF No. 62 at 6–7. Defendants are correct.

An officer may conduct a limited pat down, known as a *Terry* frisk, based on reasonable suspicion to believe that someone he or she is investigating at close range is armed and presently dangerous. *Terry v. Ohio*, 392 U.S. 1, 24 (1968). The pat down "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26.

If, during a lawful pat down, an officer "feels an item that he recognizes as contraband or evidence, that 'touch' may provide probable cause for the arrest of

1    the person and the seizure of the evidence." *United States v. Miles*, 247 F.3d 1009,

2    1014 (9th Cir. 2001). If the officer "feels an object whose contour or mass makes

3    its identity immediately apparent, there has been no invasion of the suspect's

4    privacy beyond that already authorized by the officer's search for weapons; if the

5    object is contraband, its warrantless seizure would be justified by the same practical

6    considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508

7    U.S. 366, 375–76 (1993).

8        Here, Deputy Polillo was familiar with Plaintiff's nervous behavior and

9    placement of hands over his left pocket, which gave him reasonable suspicion,

10   supported by specific and articulable facts, to believe Plaintiff had a weapon

11   concealed in his pocket. Moreover, the intrusion was limited in scope and

12   reasonably related to the suspicions that gave rise to the frisk in the first place. As

13   evident in the non-scannable disc that the Court received, ECF No. 50-6, of Deputy

14   Polillo's car dash camera filming a good portion of the events that took place,

15   Plaintiff can be seen briefly placing his hand over his left pocket, at which point

16   Deputy Polillo immediately points to it and approaches Plaintiff. *Id.* Words are

17   exchanged. *Id.* Plaintiff turns away from the camera at the point in which the pat

18   down occurs and turns back into view at the time Deputy Polillo is reaching his

19   hands into Plaintiff's pocket and confirming the contents of the pocket. *Id.* Plaintiff

20   is then placed in handcuffs. *Id.* At no point prior to the arrest does Deputy Polillo

pat down any other pocket or the rest of Plaintiff's body. *Id.*

It matters not that Deputy Polillo believed Plaintiff could have either drugs or a weapon in his pocket. *See* ECF No. 49 at 5. He did not need to be "absolutely certain" that there were weapons. *Terry*, 392 U.S. at 27. Because the purpose of a pat down is the officer's safety, as long as a search for weapons was one of the reasons for the pat down, it was lawful. Plaintiff argues that the pat down was unlawful because Deputy Polillo subjectively sought to investigate Plaintiff for drugs when no objective basis existed. The Court rejects this argument due to the Fourth Amendment's focus not on an officer's subjective state of mind, but on objective justifications. *See Whren v. United States*, 517 U.S. 806, 813 (1996). And as noted above, a reasonably prudent person would have been warranted in believing Plaintiff was armed and presently dangerous.

In addition, Deputy Polillo did not stray from the confines of the plain touch doctrine. Upon patting down Plaintiff's outer left pocket, Deputy Polillo immediately believed the item was a glass methamphetamine pipe. There is no indication in the record that he manipulated the item during the pat down. And Plaintiff does not dispute that a methamphetamine pipe is contraband.

Thus, the Court concludes that under the plain touch doctrine, Deputy Polillo had subsequent probable cause to arrest Plaintiff and seize the pipe. Accordingly, the Court denies Plaintiff's summary judgment motion for this § 1983 claim and

grants Defendants summary judgment.

### ii.    Unlawful imprisonment[4]

Because Plaintiff's arrest was lawful, his claim for unlawful imprisonment must be dismissed. *Hanson v. City of Snohomish*, 121 Wash. 2d 552, 563 (1993) ("[P]robable cause is a complete defense to an action for false . . . imprisonment."). Moreover, a claim for false imprisonment under Washington law is subject to a two-year limitation period. Wash. Rev. Code ("RCW") § 4.16.100(1). The facts giving rise to this claim took place on November 27, 2015. ECF No. 1. The complaint was filed on January 18, 2018, effectively barring this claim. *Id.* Lastly, Plaintiff abandons this claim in his response to Defendants' summary judgment motion. Accordingly, the Court grants Defendants summary judgment on this claim.[5]

## B.    Excessive force and assault

The Court now turns to Defendants' motion for summary judgment on Plaintiff's remaining claims, including claims of assault and excessive force. ECF No. 48 at 7. The assault and excessive force claims arise from the skirmish that ensued following Plaintiff's arrest. Plaintiff claims there were two instances of unlawful force: (1) when he was pulled off his feet from behind by Deputy Polillo,

---

[4] The Court notes that Plaintiff failed to plead supplemental jurisdiction for his state claims. *See* ECF No. 1.

[5] Because this tort claim is dismissed, liability under a *respondeat superior* theory is dismissed as well. *Stinebaugh v. County of Walla Walla*, No. CV-07-5019-LRS, 2008 WL 4809886, at *19 (E.D. Wash. Oct. 31, 2008).

ORDER ON DISPOSITIVE MOTIONS - 15

causing him to fall face-first on the ground; and (2) when he was subsequently lifted up by his handcuffs. ECF No. 50-4 at 27.

## 1.    Excessive force

The Fourth Amendment's prohibition against unreasonable seizures permits officers to use only such force that is "objectively reasonable" to effect an arrest under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This "is ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). It is a test that escapes "mechanical application" and "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. "[W]hether a particular use of force was reasonable is rarely determinable as a matter of law." *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In determining reasonableness, "the nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced against the "countervailing government interests at stake." *Id.* (internal quotation marks omitted). Application of the test requires consideration of several factors, including, but not limited to: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others,

and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Here, the Court cannot assess the reasonableness of force used to effect Plaintiff's arrest because genuine disputes of material fact remain. There is an initial dispute as to whether Deputy Polillo was "mule kicked." If he was, the government's interests become stronger; if he was not, the intrusion appears stronger. Moreover, Defendants claim that Plaintiff slammed his head against the hood of the car as if to break the pipe that had been placed nearby, while Plaintiff asserts he merely dropped his head onto the patrol car. Plaintiff's actions affect the reasonableness of the officers' conduct, i.e., whether Plaintiff was posing a threat to his own safety.

Therefore, in viewing the evidence in Plaintiff's favor, as the Court must, the Court concludes that genuine disputes of material facts remain, and a reasonable juror could conclude that the officers used an unreasonable amount of force in effecting the arrest. The Court now turns to who may be potentially liable under this claim.

//

//

//

//

### i.    Qualified immunity[6]

Defendants argue that Defendants Polillo, McGowan, and Forsberg are entitled to qualified immunity. To determine whether an officer is entitled to qualified immunity in a § 1983 claim, the Court engages in a two-step analysis: (1) was a constitutional right violated and (2) was it a clearly established right. *Saucier v. Katz*, 533 U.S. 301 (2001). However, this analysis is flexible and optional; the Court can always dismiss based on qualified immunity without deciding whether there has been a constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223 (2001). Indeed, in some cases, "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 236–37.

This is one of those cases. As noted above, it is unclear whether Plaintiff's right to be free from the use of excessive force was violated. Thus, the Court conducts the second inquiry. An officer's conduct violates clearly established law when every reasonable official would have understood that what he or she is doing

---

[6] Plaintiff does not indicate in his complaint whether he is suing Defendants Polillo, McGowan, and Forsberg in their individual or official capacities. *See* ECF No. 1. In opposing Defendants' summary judgment motion on the issue of qualified immunity, Plaintiff does not suggest that he sues them in their official capacities. Thus, the Court first determines that Plaintiff sues them in their individual capacities, because it is well settled that qualified immunity is not available to officers sued in their official capacities. *See, e.g.*, *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993).

ORDER ON DISPOSITIVE MOTIONS - 18

violates that right. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 973 (9th Cir. 2009). The inquiry looks to *specific* and *particularized* conduct. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635 (1987); *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). That is, the question here is not whether every reasonable official would have understood that he or she may not use excessive force in effecting an arrest, but whether he or she would have understood that pulling a person's legs out from behind him and pulling him up by his handcuffs constituted excessive force.

There need not necessarily be a prior federal decision on point, but officers must have had a "fair warning" that their conduct was impermissible. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court concludes upon reviewing case law that on November 27, 2015, when the incident took place, it was not clearly established that pulling out a suspect's legs from behind him or pulling him up by his handcuffs constituted excessive force. In fact, the lack of cases on point indicate strongly that the officers are entitled to qualified immunity because they did not have a fair warning that their conduct was unlawful. Plaintiff's response in opposition misses the mark because he posits that the excessive force took place during a *Terry* frisk. ECF No. 62 at 8–9. As noted above, Plaintiff was already placed under lawful arrest by the time this

skirmish ensued, so case law discussing the use of force during investigative stops do not apply. Accordingly, the officers are dismissed from Plaintiff's § 1983 claim based on the excessive use of force.

### ii. *Monell*[7] **liability**

Plaintiff relatedly pleads that Defendants Asotin County and Asotin County Sheriff's Department are liable for the excessive force used by the officers through their "custom, policy, or practice." ECF No. 1 at 15. Governmental liability based on a policy or custom may be established in several ways: (1) the official policy of a municipal legislative body, (2) actions by municipal agencies or boards that exercise authority delegated by the municipal legislative body, (3) actions by those with final authority for decisionmaking in the municipality with respect to the subject matter in question, (4) a policy of inadequate training or supervision, and (5) custom. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of Canton v. Harris*, 489 U.S. 378 (1989).

Here, in resisting summary judgement on *Monell* liability, Plaintiff merely responds that "he has provided sufficient evidence, and the Court is well aware based on the sealed filings [found at ECF No. 37], to support allegations Deputy

---

[7] Municipalities may be liable under § 1983 for their own unconstitutional or illegal policies or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

ORDER ON DISPOSITIVE MOTIONS - 20

Polillo was inappropriately retained as a sheriff's deputy and outlines those specific issues in his Statement of Material Facts." ECF No. 62 at 7. The Court construes Plaintiff's response to mean that his theory of liability is based on an alleged policy of inadequate training and supervision.

A theory of liability based on inadequate training and supervision requires a showing of deliberate indifference to the rights of persons with whom the police come into contact. *Canton*, 489 U.S. at 388. "Rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). In fact, deliberate indifference establishing *Monell* liability can rarely be found on the basis of a single incident—"a pattern of similar constitutional violations . . . is ordinarily necessary." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted) (acknowledging that it is only in "exceptional" cases where a single incident would be sufficient).

Here, Plaintiff fails to point to any evidence indicating that *Monell* liability would be appropriate under the deliberate indifference theory. *See* ECF No. 62 at 7. While there are nearly a thousand pages of sealed documents relating to Deputy Polillo, Plaintiff does not direct the Court to any specific evidence indicating that Deputy Polillo was disciplined or investigated for the use of excessive force. *See* ECF No. 37 (filed under seal). And based on the Court's own diligent review of the

1   sealed documents, it appears that Deputy Polillo's employment was ultimately

2   terminated for reasons unrelated to the use of excessive force. Moreover, there is

3   no indication that there has been a pattern of similar use of excessive force by other

4   employees, yet alone any other incidents at all. *See id.* at 118–21. And Plaintiff does

5   not attempt to make any legal or factual arguments that this case would constitute

6   an "exceptional" case warranting a finding of deliberate indifference based on a

7   single violation. Accordingly, Plaintiff's theory of *Monell* liability fails as a matter

8   of law.[8]

9       Consequently, Plaintiff fails to state a § 1983 claim for excessive force

10  against any Defendant, and summary judgment is entered in favor of Defendants on

11  this claim as well.

12      **2.    Assault**

13      Under Washington law, an officer may be liable as a tortfeasor for assault "if

14  unnecessary violence or excessive force is used in accomplishing the arrest." *Boyles*

15  *v. City of Kennewick*, 62 Wash. App. 174, 176 (1991). Like a claim for false

16  imprisonment, however, assault is also subject to a two-year limitation period.

17  RCW 4.16.100(1). Thus, this claim is also barred by the statute of limitations and

18  subject to dismissal. And again, Plaintiff abandons this claim in his response to

19

20  _____

[8] For this reason, even if Plaintiff were suing Defendants Polillo, McGowan, and
Forsberg in their official capacities, Plaintiff fails to state a claim against them. *See,
e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989).

Defendants' summary judgment motion. Accordingly, the Court grants Defendants summary judgment on Plaintiff's assault claim.[9]

## C.    Discrimination

Plaintiff pleads in his complaint that the officers' actions were based in part on prejudice against him as an African American. ECF No. 1 at 8. He further pleads that Defendants Asotin County and Asotin County Sheriff's Department allowed discrimination based upon race, creed, or cultural origin, and that Defendant Sheriff John Hilderbrand failed to train and supervise the deputies to act in a nondiscriminatory way. *Id.* at 11–13. He states as causes of action the United States Civil Rights Act and the Washington State Civil Rights Act. *Id.*

Due to Plaintiff's inarticulate claims for relief and inartful pleading, which is prevalent throughout the complaint, the Court is unable to discern how Plaintiff claims he was discriminated against. The Court notes that this has also created confusion for Defendants. ECF No. 48 at 12 n.2, 14. While Defendants, in bringing their summary judgment motion, speculate as to what Plaintiff may have meant, the Court declines to step into Plaintiff's shoes and act as counsel. And Plaintiff fails to respond at all on this claim, providing no clarity.

In any case, the record is devoid of *any* indication of discrimination. Because

---

[9] Because this tort claim is dismissed, liability under a respondeat superior theory is dismissed as well. *Stinebaugh v. County of Walla Walla*, No. CV-07-5019-LRS, 2008 WL 4809886, at *19 (E.D. Wash. Oct. 31, 2008).

Defendants met their burden in showing they are entitled to judgment as a matter of law and no genuine disputes of material fact exist, and Plaintiff fails to point to any disputes, the Court grants Defendants summary judgment on the discrimination claims.

**D.    Negligent hiring, supervision, and retention**

Plaintiff additionally pleads in his complaint that Defendants Asotin County, Asotin County Sheriff's Department, and Sheriff Hilderbrand are liable for the negligent hiring, supervision, and retention of its employees. ECF No. 1 at 17–20.

"[T]o hold an employer liable for negligently hiring or retaining an employee who is incompetent or unfit, a plaintiff must show that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee." *Anderson v. Soap Lake Sch. Dist.*, 191 Wash. 2d 343, 356 (2018). "Negligent hiring occurs at the time of hiring, while negligent retention occurs during the course of employment." *Id*. Moreover, "an employer is not liable for negligent supervision of an employee unless the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others." *Niece v. Elmview Grp. Home*, 131 Wash. 2d 39, 48–49 (1997).

Defendants argue that these three claims fail because Plaintiff can point to no evidence that Asotin County knew, prior to hiring Deputy Polillo in March 1, 2006,

that he was unfit for employment. ECF No. 48 at 19. They also argue that Plaintiff cannot identify a flaw in the hiring process or any evidence that Polillo had a history that made him unfit for employment at the time of hiring. *Id.* This is true.

However, dismissing all three claims would ignore the evidence in the record suggesting that although there was no negligent hiring, there may have been knowledge of unfitness that would have affected the County's retention and training. Viewing the evidence in a light most favorable to Plaintiff, the record certainly indicates that a reasonable factfinder could find knowledge of Deputy Polillo's unfitness or the failure to exercise reasonable care in his retention and supervision. Accordingly, the Court grants summary judgment in Defendants' favor on the negligent hiring claim but denies it for the negligent supervision and retention claims.

**E.    Plaintiff's request for damages**

Finally, Defendants move to partially dismiss Plaintiff's request for damages.[10] ECF No. 47. They argue that Plaintiff failed to produce a computation of damages for a number of categories as required under Federal Rule of Civil Procedure 26. *Id.* They further argue that Plaintiff failed to produce an expert to testify on the necessity of multiple categories of damages. *Id.*

---

[10] While Defendants attempt to convert this motion into a summary judgment motion in their reply brief, the Court continues to treat this motion as a motion to dismiss.

1    Under Rule 26, a party must provide

2    a computation of each category of damages claimed by the disclosing
     party—who must also make available for inspection and copying as
3    under Rule 34 the documents or other evidentiary material, unless
     privileged or protected from disclosure, on which each computation is
4    based, including materials bearing on the nature and extent of injuries
     suffered . . . .

5    Fed. R. Civ. P. 26(a)(1)(A)(iii).

6    
7    The discovery cutoff in this matter has come and gone and Defendants have

     not received any detail on the computation of damages. "Rule 37(c)(1) gives teeth
8
     to these [Rule 26] requirements by forbidding the use at trial of any information
9
     required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v.*
10
     *Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti*
11
     *by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).
12
     However, if the failure to disclose was substantially justified or harmless, then
13
     exclusion is inappropriate. *Yeti*, 259 F.3d at 1106; Fed. R. Civ. P. 37(c).
14
     In lieu of or in addition to the sanction of exclusion, the Court, upon motion
15
     and after giving an opportunity to be heard, may impose other appropriate sanctions,
16
     including dismissing the action in whole or in part or striking pleadings in whole or
17
     in part. Fed. R. Civ. P. 37(c)(1)(C), (b)(2)(A)(iii) & (v). "Because the sanction of
18
     dismissal is such a harsh penalty, the district court must weigh five factors before
19
     imposing dismissal: (1) the public's interest in expeditious resolution of litigation;
20
     (2) the court's need to manage its dockets; (3) the risk of prejudice to the party

seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991) (citations and internal punctuation omitted). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Defendants filed their motion to dismiss Plaintiff's claim for damages on January 31, 2019. ECF No. 47. Under Local Civil Rule 7(c)(2)(B), Plaintiff's response was due on February 21, 2019. Not only did Plaintiff fail to argue that his failure to disclose was substantially justified or harmless, but he failed to file a response altogether. Under Local Civil Rule 7(e), failure to comply with the rules set forth in Rule 7 "may be deemed consent to the entry of an order adverse to the party who violates these rules."

Nonetheless, the Court notes that dismissal of Plaintiff's request for certain categories of damages is too drastic of a sanction, especially where only two tort claims remain. Thus, notwithstanding the fact that Plaintiff was given an opportunity to be heard and failed to respond, the Court proceeds to impose the default sanction of excluding such information for use at trial. Defendant's motion to dismiss is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendants' Motion to Partially Dismiss Plaintiff's Claims for Damages, **ECF No. 47**, is **DENIED**.

     ***A.***      Plaintiff is nonetheless **SANCTIONED** through the exclusion of information not disclosed and pertaining to paragraphs 16.2–16.5, 16.7, and 16.9–16.10 of the complaint.

2.      Defendants' Motion and Memorandum for Summary Judgment, **ECF No. 48**, is **GRANTED IN PART AND DENIED IN PART**.

     ***A.***      The Clerk's Office is **DIRECTED** to **ENTER JUDGMENT** for Defendants on Plaintiff's § 1983 claims for unlawful search, unlawful seizure, and excessive force; assault; unlawful imprisonment; and negligent supervision.

     ***B.***      Because Plaintiff's remaining claims of negligent supervision and negligent retention are asserted only against Defendants Asotin County, Asotin County Sheriff's Department, and Sheriff Hilderbrand, all other Defendants are **DISMISSED**.

     ***C.***      The Clerk's Office is **DIRECTED** to **AMEND** the caption as follows:

         STEPHEN R. JACKSON, SR., a single person,

                 Plaintiff,

v.

ASOTIN COUNTY, ASOTIN COUNTY SHERIFF'S
DEPARTMENT, and SHERIFF JOHN
HILDERBRAND,

Defendants.

**3.**    Plaintiff's cross-motion for partial summary judgment, **ECF No. 52**, is **DENIED**.

**4.**    Plaintiff's sixth claim for violations of his constitutional rights "pursuant to Article I Section 3, 7, 14, and 35 of the Washington State Constitution and the 4th, 8th, and 14th Amendments to the Constitution of the United States" are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 15th day of March 2019.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER ON DISPOSITIVE MOTIONS - 29